IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AMERICAN CONSOLIDATED INDUSTRIES, INC., *et al.*, | ) Case No.: 1:19-cv-137 ) ) Judge J. Philip Calabrese |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CHAD BLASINGIM, *et al.*, | ) ) |
| Defendants. | ) ) ) ) |

| | |
|---|---|
| MONARCH STEEL COMPANY, INC., | ) Case No.: 5:17-cv-2253 ) |
| Plaintiff, | ) Judge J. Philip Calabrese ) |
| v. | ) ) |
| JAMES EDWARD MCCRACKEN, *et al.*, | ) ) |
| Defendants. | ) ) ) ) ) |

### DEFENDANT LIBERTY STEEL PRODUCTS, INC. OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION AND/OR MOTION TO MODIFY SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING PLAINTIFFS' MOTION FOR CONTEMPT

NOW COMES Defendant Liberty Steel Products, Inc. ("Liberty"), by and through undersigned counsel, and, pursuant to Fed. R. Civ. P. 53(f)(2) and the October 10, 2021 Order Appointing Special Master, hereby objects to the Special Master's Report and Recommendation and moves this Honorable Court to modify the Special Master's Report and Recommendation as it relates to Plaintiffs American Consolidated Industries, Inc., Monarch Steel Company, Inc., and

{M0463491.1}   1

Monarch Steel Company of Alabama, Inc.'s (collectively, "Plaintiffs") Motion for Contempt. *Monarch Steel Company, Inc. v. James Edward McCracken, et al.*, N.D. Ohio, Case No. 5:17-cv-2253 (the "McCracken Case"), ECF #43. This Motion, including the objections and the requested modifications contained herein, is limited in scope, addressing the Special Master's Report and Recommendation only to the extent that it pertains to the issue of contempt. Liberty, through separate counsel, will separately respond to the Special Master's Report and Recommendation as it pertains to Plaintiffs' request for discovery sanctions.

I.  **STATEMENT OF THE CASE.**

In late 2017, Plaintiff Monarch Steel Company, Inc. ("Monarch") alleged that Monarch's former employee and Liberty had misappropriated its trade secrets and tortiously interfered with its business relationships. McCracken Case, ECF #1. An early resolution was reached and memorialized in a Settlement Agreement. McCracken Case, ECF #64-1, Settlement Agreement. The Court entered a December 12, 2017 Stipulated Dismissal with Prejudice Pursuant to Rule 41(a)(1)(A)(ii) and Order ("December 12, 2017 Order") dismissing the case with prejudice and prohibiting Liberty from "using, copying, retaining, or disclosing Monarch's 'protected property and information' as defined in the parties' Settlement Agreement." McCracken Case, ECF #21. The December 12, 2017 Order did not otherwise incorporate the Settlement Agreement by reference, nor did it otherwise incorporate any other terms of the Settlement Agreement. *Id.* While the Settlement Agreement and December 12, 2017 Order both contained certain inadvertent ambiguities, Liberty still undertook the reasonable steps within its power to comply with the terms of the December 12, 2017 Order and Settlement Agreement. McCracken Case, ECF #64-1, Settlement Agreement; ECF #64-2, Affidavit of J. Mericle; ECF #21.

Liberty's CFO, Jason Mericle, specifically instructed Mary Jo Lackey, Liberty's then-Director of Strategic Systems, and Anna Kolar, Liberty's former IT professional, to perform a search and verify that all violative e-mails were deleted. McCracken Case, ECF #64-2, Affidavit of J. Mericle, ¶ 5. Liberty's former CEO and President, James Grasso, instructed Steve Ranelli, Liberty's Vice President of Service Center Sales, to ensure that any files and documents containing Monarch Protected Property and Information were deleted from Liberty's servers. McCracken Case, ECF #64-2, Affidavit of S. Ranelli, ¶ 5; Affidavit of J. Mericle ¶ 5(c).

Notwithstanding Liberty's efforts, through the course of the subsequent litigation in *American Consolidated Industries, Inc., et al. v. Chad Blasingim, et al.*, N.D. Ohio, Case No. 1:19-cv-137 (the "Blasingim Case"), Plaintiffs claimed, via Plaintiffs' Motion for Contempt, that they discovered evidence that Liberty had acted in contravention with the Court's December 12, 2017 Order. McCracken Case, ECF #23. This allegation gave rise to this Court's assignment of the Special Master and a near-unfettered search of Liberty's systems and devices that went well beyond anything required by the Settlement Agreement or December 12, 2017 Order. McCracken Case, ECF #43. As Liberty explained in its Position Statement, the results of these searches failed to demonstrate that Liberty contemptuously violated the December 12, 2017 Order. McCracken Case, ECF #64. Liberty concedes that a few potentially violative documents may have been overlooked; however, there was a clear justification for each of the oversights. *Id.* Any potentially violative documents were *de minimis* violations of the Settlement Agreement and could not have resulted in any harm to Plaintiffs.[1] *Id.*

---

[1] Five of the six violating documents pertained to Liberty's failed bid to a Monarch customer on August 31, 2017. This is more than two (2) months prior to the Settlement Agreement. None of the information relating to a bid for work in 2017 would have been of any value or relevance given the volatility in the steel industry and the short nature of the value of any quotes. While Liberty admits that these documents technically violate the Settlement Agreement, they are stale

{M0463491.1}                                    3

On May 20, 2022, the Special Master filed her Report and Recommendation ("R&R"). McCracken Case, ECF #62. The Special Master's R&R concluded that Plaintiffs' Motion for Contempt should be "granted in part and denied in part." *Id.*, p. 28. While Liberty largely concurs with the Special Master's findings with respect to Plaintiffs' Motion for Contempt, Liberty objects to certain findings by the Special Master that are inaccurate and Liberty requests that these findings relating to the issue of contempt be modified. More specifically, Liberty asserts that the factual findings within the Special Master's Report and Recommendation should be modified to reflect: (1) that James E. McCracken was not hired by Liberty pursuant to the "Southern Strategy"; (2) that, in negotiating the Settlement Agreement, Liberty and Plaintiffs agreed that a forensic search of Liberty's systems was not required; and, (3) that the Settlement Agreement and the Court's December 12, 2017 Order contained certain ambiguities that made flawless compliance impossible. Additionally, Liberty asserts that the Special Master's R&R should be modified to reflect that Liberty's actions pursuant to the Court's December 12, 2017 Order were reasonable, and not contemptuous, in light of the ambiguities within the Settlement Agreement and the Court's December 12, 2017 Order. Finally, while Liberty contends that these modifications would render the recommended sanctions inappropriate, to the extent that this Court finds that any sanctions are appropriate, Liberty requests that this Court modify the R&R to limit the sanctions to require Liberty to only bear the costs for remediation and K.L. Discovery's fees.

---

information that somehow remained in the inbox or text record of a former Liberty employee and which were not used, accessed, or improperly leveraged on a forward-going basis.

{M0463491.1}                                                4

## II. OBJECTIONS AND REQUESTED MODIFICATIONS.

### A. Objections and Requested Modifications to Findings of Fact.

#### 1. James E. McCracken was not hired by Liberty as part of the "Southern Strategy."

The Special Master's R&R states, "Beginning in 2017, Liberty sought to establish a presence in the southeastern United States through the acquisition of Mississippi Steel Processing, LLC ("MS Steel"), and to expand its sales force in that region. James McCracken, Jon Campbell, and Chad Blasingim were employees of Monarch who were recruited to join Liberty as part of this 'Southern Strategy.'" McCracken Case, ECF #62, p. 2. In support of this factual assertion, the Special Master cites to Liberty's submission to the Special Master regarding discovery sanctions. McCracken Case, ECF #65, pp. 3-4. It is unclear how this citation supports the Special Master's finding. *Id.*

While Plaintiffs' have relied on such unsupportable contentions to further their narrative of a larger conspiracy, there is simply no evidence in the record to suggest that James McCracken was recruited as part of the "Southern Strategy." Rather, the evidence indicates that James McCracken was working primarily in Northeast Ohio. In fact, as part of the Settlement Agreement, Liberty agreed not to conduct business with customers that James McCracken contacted after leaving Monarch about whom James McCracken possessed Monarch's Protected Property and Information. McCracken Case, ECF #64-1, Settlement Agreement. The list of "Restricted Customers," which can be found in the May 23, 2018 Affidavit of Jason Mericle, includes 16 companies, 14 of which are headquartered in Ohio. McCracken Case, ECF #64-1, May 23, 2018 Affidavit of J. Mericle, ¶ 6. The remaining two companies are headquartered in Pennsylvania and Indiana. *Id.* Given that this "Restricted Customer" list was intended to identify the customers

contacted by James McCracken during his brief tenure with Liberty, and none of those customers are in the South, it is clear that James McCracken was not engaged by Liberty for purposes of its "Southern Strategy." McCracken Case, ECF #46-1, Settlement Agreement and May 23, 2018 Affidavit of J. Mericle, ¶ 6. Additionally, James McCracken has not been deposed, and no deposition testimony to date indicates that James McCracken was engaged by Liberty for such a purpose.

Accordingly, Liberty respectfully requests that the Special Master's R&R be modified to reflect that James McCracken was not recruited by Liberty as part of the "Southern Strategy."

### 2. In negotiating the Settlement Agreement, Liberty and Plaintiffs agreed that a forensic search of Liberty's systems was not required.

The Special Master's R&R states, "For its part, Liberty chose to handle remediation of its systems 'in house.'" McCracken Case, ECF #62, p. 6. In making this statement, the Special Master fails to recognize that the remediation process was a negotiated term of the Settlement Agreement. The Special Master does not acknowledge the evidence provided by Liberty, which demonstrates that it was not an independent choice made by Liberty to handle the remediation "in house." Rather, Monarch and Liberty, in negotiating the terms of the Settlement Agreement, discussed and decided against the prospect of requiring Liberty to hire a third-party forensic firm to remediate Liberty's systems. McCracken Case, ECF #64-2, Affidavit of J. Mericle, Exhibit A. More specifically, Monarch had initially proposed that Liberty be required to perform a forensic search of Liberty's systems in order to locate and purge any of Monarch's Protected Property and Information. *Id.* Liberty, however, objected to a forensic search of its systems, and that term was stricken from the final Settlement Agreement. *Id.*; McCracken Case ECF #64-1, Settlement Agreement.

In sum, any suggestion that Liberty independently "chose" to handle its remediation in any certain way is untrue. Regardless of whether this Court views the resulting Settlement Agreement as containing certain shortcomings, the terms of remediation were still a negotiated term of the Settlement Agreement. The Plaintiffs should therefore not be afforded additional protections by this Court that Monarch was unable to achieve when it negotiated the Settlement Agreement. As a result, Liberty respectfully requests that the Special Master's R&R be modified to reflect that the terms of remediation were, in fact, negotiated by the Parties involved.

### 3. The Settlement Agreement and the Court's December 12, 2017 Order contained certain ambiguities that made flawless compliance impossible.

The Court's December 12, 2017 Order prohibited Liberty from "using, copying, retaining, or disclosing Monarch's 'protected property and information' as defined in the parties' Settlement Agreement." McCracken Case, ECF #21. "Monarch's Protected Property and Information" was vaguely defined to include all trade secret and protected property, pursuant to the law. The Settlement Agreement further defined "Monarch's Protected Property and Information" to include essentially any documents or information that were attained by James McCracken from Monarch during his employment with Monarch. McCracken Case, ECF #64-1, Settlement Agreement. While the Special Master's R&R does not explicitly state that the Court's December 12, 2017 Order is "definite and specific," the finding is implied by the Special Master's recommendation that Liberty be found in contempt. McCracken Case, ECF #62, p. 21. At first blush, the directive within the December 12, 2017 Order seems plain and unambiguous. McCracken Case, ECF #21. In reality, though, the definition of "Monarch's Protected Property and Information" is very broad, rendering it impossible to clearly identify without further specifications. McCracken Case, ECF

#64-1, Settlement Agreement. The implication that the December 12, 2017 Order is "definite and specific" so to render the Order enforceable, disregards the multitudes of interpretations that can be attributed to Monarch's Protected Property and Information. *Id.*; McCracken Case, ECF # 21.

To be clear, despite the Settlement Agreement including a "process and protocol," no specific process or protocol for searching for, identifying, or returning Monarch's Protected Property and Information was incorporated into the Settlement Agreement. McCracken Case, ECF #64-1, Settlement Agreement. Indeed, the Parties never agreed to, nor did Plaintiffs even submit search terms for the search of Liberty's system. *Id.* Rather, in locations that would likely have contained greater than several hundred thousand documents, Liberty was charged with independently assessing whether a document or information contained within a document qualified as Monarch's Protected Property and Information.[2]

The process employed in these Special Master proceedings have highlighted precisely why the directive within the December 12, 2017 Order was too ambiguous to be flawlessly executed. Throughout this process, search terms were heavily negotiated, with some proposed search terms yielding tens of thousands of documents and no remotely relevant documents. After countless hours dedicated to sifting through the documents, the parties submitted their position statements. These position statements demonstrate that, even at this point, after employing a forensic IT firm,

---

[2] As long-time competitors in a specific field and geographic area, there is inevitably overlap in Liberty's client information and that which Monarch views as its Protected Property and Information. For example, it required months of negotiations to decide upon the "Restricted Customer" list because Liberty was able to demonstrate pre-existing contacts or relationships with the vast majority of the customers identified by James McCracken. While Liberty ultimately agreed to not do business with certain customers for a while, they certainly had evidence in their system of long-term preexisting contact or sales information regarding many of the customers of Monarch. *See* McCracken Case, ECF 64-2, Affidavits. These same impediments to remediation have arisen at present, with Monarch's full involvement. It was simply not possible to conduct a flawless remediation without Monarch's involvement in 2018.

{M0463491.1}                        8

search terms, exorbitant hours, and a court-appointed Special Master, the parties still do not agree as to which documents are Monarch's Protected Property and Information. *See* McCracken Case, ECF #63, ECF #64. Clearly, the December 12, 2017 Order did not contemplate this extensive process; however, even if it had, the Parties would still have been at odds over its inherent ambiguities.

In sum, without at least search terms, the Parties never would have agreed on what did or did not constitute Monarch's Protected Property and Information. Given the level of precision that the Parties now recognize is needed to flawlessly comply with the terms of the Settlement Agreement and December 12, 2017 Court Order, it is clear (with the benefit of hindsight) that necessary terms were omitted. The term "Monarch Protected Property and Information" is, on its own, not definite or specific enough to allow for flawless compliance. It therefore cannot serve as the basis for contempt. Accordingly, Liberty objects to this finding and respectfully requests that this Court modify the Special Master's R&R to acknowledge that flawless compliance with the ambiguous Settlement Agreement and December 12, 2017 Order was simply impossible.

**B. Objections and Requested Modifications to Legal Conclusions: Liberty's actions pursuant to the Court's December 12, 2017 Order were reasonable, and not contemptuous, in light of the ambiguities within the December 12, 2017 Order and the Settlement Agreement.**

In concluding that Liberty was in contempt of the December 12, 2017 Order, the Special Master's R&R states, "By this measure, the record here supports a finding of contempt. As evidenced by what has transpired in *Blasingim* and by its own admissions, Liberty did not take all reasonable steps within its power to comply with its obligations under the Settlement Agreement to destroy and not retain Monarch Protected Property and Information—namely, for purported cost

{M0463491.1}                                                9

reasons, Liberty chose to rely on in-house resources rather than a third-party forensic service to carry out the remediation, and did not consider all potential sources of information within Liberty's systems." In making this finding, the Special Master fails to note the impossibility associated with carrying out the ambiguous terms of the December 12, 2017 Order and Settlement Agreement or that the protocol for "in house' searching by Liberty was negotiated with Monarch.

Under Sixth Circuit case law, "A litigant may be held in contempt if his adversary shows by clear and convincing evidence that 'he violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir.1987). However, where there are ambiguities within the Court's order, they "must be resolved in favor of persons charged with contempt." *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir.1996).

"Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *U.S. v. Rylander*, 460 U.S. 752, 757 (1983). The contemnor may also defeat a motion for contempt by demonstrating that it "took all reasonable steps within [its] power to comply with the court's order." *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir.1989); *see also Metron Nutraceuticals, LLC v. Cook,* 1:20-CV-01803, 2021 WL 2946157, at *1 (N.D. Ohio July 14, 2021).

As is more fully detailed in Section II(A)(3), the December 12, 2017 Order and Settlement Agreement contained fatal ambiguities. Even had Liberty engaged a third-party forensic firm to remediate its systems, as the Special Master suggests would have been a reasonable step, it could not have resulted in flawless compliance absent a more definite and specific directive. As this process has illustrated, third-party forensic firms require explicit search terms, which were not

suggested nor provided by Monarch in the December 12, 2017 Order or Settlement Agreement. McCracken Case, ECF #21; ECF #64-1, Settlement Agreement.

In other words, regardless of who was conducting the remediation, flawless compliance would have required clairvoyance on Liberty's part. It was simply impossible. What's more, even if Liberty were somehow able to determine the perfect search terms for a third-party forensic firm, the results would have still resulted in a multitude of judgment calls by Liberty. A document or information may, on its face, appear not to be violative; however, as has been the case in the course of these proceedings, Monarch still contends that it is violative. ECF #63, generally. It is clear that Liberty and Monarch have overlapping customer bases that make it impossible to unequivocally ascertain the source of certain information. ECF #64-2, Affidavits, generally.

The context of the settlement agreement also needs to be taken into account, the parties settled this case quickly before any discovery and agreed that the expense of a forensic search was not necessary or reasonable. ECF #64-2, Affidavit of J. Mericle, Exhibit A. Liberty should not now, with the benefit of hindsight, be tagged with a requirement for a forensic search that did not exist at the time.

Notwithstanding the ambiguities that ultimately resulted within the December 12, 2017 Order and Settlement Agreement, Liberty undertook reasonable efforts to comply. ECF #64-2, Affidavit of J. Mericle.[3] Flawless compliance, however, was simply an unattainable goal. For these

---

[3] Jason Mericle stated, under oath, that he personally "instructed Mary Jo Lackey, Liberty's Director of Strategic Projects, and Anna Kolar, Liberty's former IT professional, to perform a search and verify that all e-mails [between Liberty and James McCracken] were deleted." Jason Mericle further stated, under oath, that he was party to a conversation where Liberty's former President and CEO instructed Liberty's Vice President of Service Center Sales, to whom James McCracken reported, "to ensure that any files and documents containing Monarch Protected Property and Information were deleted." McCracken Case, ECF #64-2, Affidavit of J. Mericle, ¶ 5.

reasons, Liberty objects to the Special Master's recommendation for a finding of contempt, and respectfully requests that this Court modify the Special Master's R&R accordingly.

## C. Objections and Requested Modifications to Recommended Sanctions.

Upon concluding that Liberty is in contempt, the Special Master states, "Documents and information that the parties agree was improperly retained in violation of the McCracken Settlement Agreement should be securely and forensically deleted from Liberty's systems, accounts, and devices at Liberty's expense. Additional documents and information that have been identified through the Special Master process as potentially violative of the Settlement Agreement should be segregated pending determination by the trier of fact as to whether such materials contain or constitute 'Monarch's trade secret property and protected information as defined by federal and Ohio law.'... As a sanction, Liberty should be required to exclusively bear all fees and expenses associated with these Special Master proceedings, including the Special Master compensation and third-party vendor fees." McCracken Case, ECF #62, p. 28.

While Liberty contends that it is not in contempt, as explained in Section II(B), Liberty willingly admits that certain documents that violated the Settlement Agreement were inadvertently overlooked. While these oversights were the product of ambiguities within the December 12, 2017 Order and Settlement Agreement, Liberty agrees that these documents should have been purged. *See* Section II(A)(3). Accordingly, Liberty takes no issue with requesting that K.L. Discovery "securely and forensically delete[ documents and information that the parties agree were improperly retained] from Liberty's systems, accounts, and devices at Liberty's expense." McCracken Case ECF #62, p. 28. What's more, with the Court's approval, Liberty would further request that K.L. Discovery securely and forensically delete the "[a]dditional documents and information that have been identified through the Special Master process as potentially violative

of the Settlement Agreement." *Id.* To that end, Liberty would request that the Court instruct Monarch to compile a full list of all documents which it believes to be violative, so that those documents may be remediated from Liberty's systems, regardless of whether they are Monarch's Protected Property and Information. Liberty proposes that this remediation process also be at its expense. Simply, Liberty seeks to fully remediate its systems, as was always intended, to the satisfaction of all parties.

Liberty does, however, object to it "exclusively bear[ing] *all* fees and expenses associated with these Special Master proceedings. . . ." *Id.* (emphasis added). Liberty recognizes that the expenses associated with K.L. Discovery have revealed limited information and documents that Liberty agrees should have been purged. Liberty does not, however, believe that the few violative documents discovered during the course of this process rises to contempt, especially because the December 12, 2017 Order and the Settlement Agreement were not "definite and specific." *See* Section II(B). Flawless compliance was therefore impossible. Should this Court find Liberty in contempt and sanctions appropriate, however, Liberty is agreeable to exclusively bearing the fees associated with K.L. Discovery's services. Liberty suggests that any further sanctions beyond bearing the cost for K.L. Discovery's services is inappropriate.[4]

As a final point, Liberty notes that the Special Master recommended that the Motion for Contempt be granted in part and denied in part. Given that Plaintiffs are not a "prevailing party" in these proceedings, reallocating the remainder of these expenses is not warranted. *See* Fed. Civ. R. 53(g).

---

[4] Importantly, most of the documents identified as violative were provided to Plaintiffs during the course of discovery in the Blasingim case, essentially rendering the Special Master proceedings for purpose of this Motion for Contempt duplicative. Liberty should therefore not be required to exclusively bear the fees for the Special Master (or any other fees or expenses associated with the Special Master proceedings, except for K.L. Discovery's fees).

{M0463491.1}  13

In sum, Liberty does not object to exclusively bearing all remediation costs, including remediation costs associated with "potentially violative" information and documents. If this Court finds Liberty in contempt, Liberty also does not object to exclusively bearing the costs associated with K.L. Discovery's services in the course of these Special Master proceedings. Liberty does, however, object to any further sanctions, as the record does not support a finding of contempt and, even if the Special Master's finding with respect to contempt were accepted by this Court, Plaintiffs are not a "prevailing party." Liberty respectfully requests that this Court modify the Special Master's R&R accordingly.

### III. CONCLUSION.

In light of the foregoing, Liberty respectfully requests that that this Honorable Court sustain Liberty's objections and modify the Special Master's Report and Recommendation accordingly,

                                      Respectfully submitted,

                                      */s/Thomas F. Hull*
                                      TIMOTHY J. JACOB (0011012)
                                      THOMAS F. HULL (0087034)
                                      KARLY B. JOHNSON (0095221)
                                      Manchester Newman & Bennett, LPA
                                      Atrium Level Two
                                      201 E. Commerce Street
                                      Youngstown, Ohio 44503
                                      PH: (330) 743-1171 / FAX: (330) 743-1190
                                      tjacob@mnblawyers.com;
                                      thull@mnblawyers.com
                                      kjohnson@mnblawyers.com
                                      *Counsel for Defendant Liberty Steel Products,*
                                      *Inc. in Monarch Steel Company, Inc. v.*
                                      *McCracken, et al., N.D. Ohio No. 5:17-CV-*
                                      *02253*

15

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2022, I electronically filed the foregoing with the Court's CM/ECF system. Notice of this filing will be sent automatically to all counsel of record. Parties may access the filing through the Court's system.

<em>/s/Thomas F. Hull</em>